IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DEBRA PETTIT, ) | |
| ) | CIVIL ACTION NO. 0:07-1777-JFA-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on May 13, 2003, alleging disability as of June 25, 2002 due to fibromyalgia, chronic obstructive pulmonary disease (COPD), depression and insomnia. (R.pp. 78-80, 116). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on July 1, 2005. The ALJ thereafter denied Plaintiff's claim in a decision issued February 18, 2006. (R.pp. 56-62). However, the Appeals Council subsequently remanded the case to the ALJ for further proceedings; (R.pp. 69-70); and a supplemental hearing was held before the ALJ on



December 14, 2006. (R.pp. 374-414).  The ALJ thereafter again denied Plaintiff's claim on January 19, 2007. (R.pp. 14-29).  This time, the Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court.  Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### **Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).  The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642.



"[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-six (46) years old when she alleges her disability began, has two years of college and past relevant work experience as a medical records technician/medical secretary. (R.pp. 78, 117, 120). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform her past relevant work, she nevertheless retains the residual functional capacity to perform a limited range of light work,[1] and is therefore not disabled. (R.pp. 17, 28).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly rejecting the opinion of Plaintiff's treating physician, by failing to consider the effects of Plaintiff's impairments in combination, by improperly evaluating Plaintiff's subjective complaints of pain and other limitations, and by finding that Plaintiff could perform gainful activity without a finding that she has transferable skills. However, after careful review and consideration of the evidence and

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3



arguments presented, the undersigned finds and concludes that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

Plaintiff's first assertion of error relates to the ALJ's allegedly improper consideration and evaluation of the opinion of Dr. Henry Shugart, one of Plaintiff's treating physicians. Dr. Shugart first saw the Plaintiff in June 2001 for what was described as "49 different" complaints. Dr. Shugart noted that Plaintiff's "very long list of symptoms and problems" could be fibromyalgia[2], although on examination she was noted to be "neurovascularly intact" with only minimal bilateral edema. Plaintiff also had 5/5 strength in her extremities; normal respiration, pulse and blood pressure; and no heart murmurs, rubs or gallop. Plaintiff was noted to be obese (219 pounds). (R.p. 305). Plaintiff returned to see Dr. Shugart on July 6, 2001, and was diagnosed with "presumed fibromyalgia" based on her complaints of insomnia, fatigue, and chronic pain in her joints. (R.p. 303). This was a year before Plaintiff's condition allegedly became disabling, and she continued to work.

Plaintiff continued to see Dr. Shugart over the course of the next year for complaints of pain, as well as for complaints of asthma, "significant stress at work", and other problems. However, other than some problems with blood pressure and Plaintiff being obese, Dr. Shugart's

---

[2]Fibromyalgia is a chronic condition recognized by the American College of Rheumatology (ACR) characterized by inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. Brosnahan v. Barnhart, 336 F.3d 671, 672 n. 1 (8th Cir. 2003) (citing Jeffrey Larson, Fibromyalgia, in 2 The Gale Encyclopedia of Medicine 1326-27 (Jaqueline L. Longe, et al.eds., 2d ed. 2002)).

4



objective findings continued to be in the normal range, with no obvious extremity edema or other significant adverse findings. See generally, (R.pp. 281,283, 285-287, 289, 291, 293, 295, 297, 299). Certainly, there is nothing in these records to indicate any determination by Dr. Shugart that Plaintiff's condition was disabling, and indeed Plaintiff does not claim that her condition was disabling during this period of time.

The first record of Plaintiff having been seen by Dr. Shugart after her alleged disability onset date (June 25, 2002) is a visit on November 6, 2002. Dr. Shugart noted Plaintiff's prior problems with anxiety disorder, fibromyalgia, and chronic back pain, and that Plaintiff was complaining of pain in her arms and legs and "trigger points". He also noted that Plaintiff was taking Zoloft for depression and that this condition was "better". Dr. Shugart advised Plaintiff to continue taking her medications and to actively engage in an exercise program. (R.p. 278). Plaintiff did not thereafter return to see Dr. Shugart until three (3) months later, on February 4, 2003. Dr. Shugart noted that Plaintiff's condition had generally improved due to exercise and medications she was taking, and that she had even lost a little weight. (R.p. 276). There is nothing in Dr. Shugart's November 6, 2002 or February 4, 2003 reports to indicate that Plaintiff's condition had significantly worsened, or that Dr. Shugart believed Plaintiff was totally disabled. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990) [condition that was not disabling during working years and has not worsened cannot be used to prove present disability]; Craig v. Chater, 76 F.3d 585, 596, n.7 (4th Cir. 1996) [for an individual to establish that a condition he had previously worked with subsequently became disabling, he must establish significant deterioration in that condition]; Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970) [denial of benefits affirmed where the claimant worked for many years with longstanding problems which affected her to the same extent]; See also Parven-McGladdery v.



Commissioner, No. 02-1052, 2002 WL 31780954 (6th Cir. December 11, 2002), ["[A]lthough some people suffering from fibromyalgia may be totally disabled, most people inflicted with that disease are not disabled". ] citing Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

Plaintiff returned to see Dr. Shugart again on May 5, 2003 complaining of pain and "increased stress", but "nothing specific". Plaintiff was found to have no synovitis[3], no swelling, and "no other issues." While Plaintiff complained about occasional blurred vision, Dr. Shugart noted that her recent metabolic work-up in December was "all negative". Dr. Shugart's patient notes also reflect that Plaintiff asked him about obtaining disability, and that she was told that if she was "interested in this she needs to go through the process of going through SSI or obtaining forms which we will gladly fill out." (R.p. 274). On her next visit to Dr. Shugart on July 17, 2003, Plaintiff advised that "overall she [was] doing fairly well", that she had "good days/bad days", and that the medications she was on were "fairly helpful". Plaintiff's physical examination was unremarkable, it was noted that her blood pressure was "currently well-controlled", and that she would continue with her "current meds for pain control." (R.p. 272).

On August 7, 2003, Plaintiff was examined by consultative physician Dr. Larry Korn. Plaintiff told Dr. Korn that the reason she had stopped working was because her company had "downsized", not because she could no longer work, but that she had not worked since that time because her doctor had told her not to seek work. Plaintiff complained that she "hurt[] all over from head to toe, [with] increased pain her arms and legs," that she was always tired, had a poor sleep

---

[3] Synovitis is the medical term for inflammation of a synovial membrane, which line those joints which possess cavities, namely synovial joints . The joint usually swells due to fluid collection, and the condition is usually painful, particularly when the joint is moved. http://en.wikipedia.org/wiki/Synovitis.



pattern, and that she experienced "increased pain with any or no activities."  Plaintiff also stated that she had suffered from chronic obstructive pulmonary disease (COPD) and asthma since childhood, and that she had difficulty bending and arising from a bent-knee position due to arthritis in her knees. On examination Plaintiff was found to be in a normal mood with an unremarkable station and gait. Plaintiff was "morbidly obese", her cardiac was negative, her lungs were clear to auscultation with no wheezing, she had 5/5 strength in her upper extremities with no crepitance in normal rotation, and her neurological findings were essentially normal.  With respect to her lower extremities, she was able to perform a full squat, although she indicated it was uncomfortable, and she exhibited difficulty arising.  Dr. Korn did not find any real traumatic arthritic deformity of the knees, and there was no edema, although he did opine that Plaintiff had "some fairly substantial patellofemoral grinding with passive flexion and extension, left knee more than the right."  Plaintiff's lumbar spine was "hypersensitive to palpation", but she was able to fully extend her knees in a seated position "with the ankle dorsiflexed."  Dr. Korn diagnosed Plaintiff with chondromalacia of the knees, obesity, and fibromyalgia and asthma (both by stated history).[4] (R.pp. 209-211).  Dr. Korn concluded that Plaintiff

> May have some difficultly if she were required to perform repetitive frequent squats and crouches due to the patellofemoral findings as well as with her central obesity. Her several other difficulties however are of a subjective nature related to the fibromyalgia. In light of the medications she requires for her pain, she should not work around dangerous moving machinery or above the floor level.

(R.p. 212).

Plaintiff's medical records were also reviewed by two state agency medical consultants on August 15, 2003.  Dr. J.K. Phillips completed a psychiatric review technique form in

---

[4]Dr. Korn also noted that Plaintiff had a narcotic "habituation" secondary to her complaints of fibromyalgia. (R.p. 211).



which he concluded that Plaintiff did not have a severe mental impairment, finding that she had only mild restrictions in her activities of daily living and in maintaining concentration, persistence or pace, with no limitations in her ability to maintain social functioning and no episodes of decompensation. (R.p. 223). Dr. Hugh Clarke completed a physical residual functional capacity assessment in which he opined that Plaintiff could perform light work restricted to only occasional climbing, balancing, stooping, kneeling, crouching or crawling, with avoidance of even moderate exposure to hazards such as heights and machinery. (R.pp. 228-229, 231, 233). On March 5, 2004, Dr. Lisa Varner reviewed Plaintiff's records and reached the same conclusion with respect to Plaintiff's mental condition as had Dr. Phillips. (R.pp. 235-248). Similarly, Dr. W.B. Hopkins reviewed Plaintiff's medical records on August 11, 2004, and concluded that Plaintiff could perform light work with similar limitations to those found by Dr. Clarke, with the additional limitation of no more than frequent, non-repetitive overhead reaching. (R.pp. 249-256).

The record also reflects that on May 11, 2004, Plaintiff began seeing Dr. Kenneth Wells for treatment of depression. Dr. Wells described Plaintiff as pleasant with "some smiling" during this visit, and with a "moderately depressed" mood. Plaintiff talked about her physical problems, stated that "to a large degree [her] depression [was] related to her grandmother [who was very difficult] living with her", and that she had also had "some stress with neighbors and with other family members." She reported "her last physical exam was essentially negative." Plaintiff further told Dr. Wells that she had lost her job when the doctor for whom she had worked for sixteen (16) years split his practice. Plaintiff advised that she was "functioning fairly well with the current Zoloft", and that she would follow through with counseling. (R.pp. 261-262). Plaintiff thereafter continued to see Dr. Wells through October 2004, with Dr. Wells' office notes generally reflecting



that she was doing well and was managing her family and financial pressures, although it was a struggle. By August 2004 Plaintiff was noted to be "doing rather well". See generally, (R.pp. 258-260).

On September 24, 2004, Plaintiff returned to see Dr. Shugart for the first time in almost a year. Dr. Shugart conducted a physical examination, noting that Plaintiff's lungs were clear bilaterally, that there was no obvious edema in her extremities, with no other significant findings (other than the fact that Plaintiff remained obese- weight 215). Nevertheless, Dr. Shugart described Plaintiff as being in "poor general health", apparently due to her "known fibromyalgia" and the medications she was on. (R.p. 268). Plaintiff returned to see Dr. Shugart a month later (November 30, 2004), at which time she had "no acute complaints", but noted that she was "trying for disability and wants to send paperwork [Dr. Shugart's] way." Dr. Shugart assessed Plaintiff with "no current issues or stresses chronic and diagnoses", and stated that he would "fill out paper work to the best of our ability." Plaintiff was continued on her medications. (R.p. 264).

Four months later, Dr. Shugart wrote a "To Whom It May Concern" letter on January 31, 2005, in which he opined that Plaintiff suffered from episodic pain, muscle stiffness and persistent fatigue accompanied by episodes of shortness of breath, that she had difficulty sitting in one place for a prolonged amount of time without needing to get up and move, with prolonged activity serving to exacerbate this condition, and that Plaintiff's fibromyalgia at times flared-up causing period of pain, discomfort and stiffness. Dr. Shugart concluded by stating "I have done no formal disability assessment of [Plaintiff] but please feel free to utilize my medical records and contact me for any further questions." (R.p. 263). In a subsequent physician's statement provided to the State Department of Social Services on April 29, 2005, Dr. Shugart opined that Plaintiff was

9



unable to engage in any type of employment due to her medical problems, and had no work capacity. (R.p. 319).

In a physical medical source statement dated May 27, 2005, Dr. Shugart reported that Plaintiff was able to lift ten pounds on an intermediate or unpredictable basis, that her ability to stand and walk was effected by her fibromyalgia and arthritic knees, and that Plaintiff was able to sit for one hour without interruption. He further opined that Plaintiff could "never" engage in a variety of postural activities, and that her physical condition also impaired her ability to reach, push and pull, or work around such hazards as heights, machinery, and variables of temperature and humidity. Dr. Shugart did not assess how frequently Plaintiff could lift or carry objects or stand and walk, and stated that he was "unsure" how many hours Plaintiff could sit in an eight hour work day. When asked if his diagnosis was confirmed by objective findings, Dr. Shugart stated "yes", but when then asked if he was basing his opinion primarily on Plaintiff's subjective complaints, he also answered "yes-based on nature of diagnoses." (R.pp. 320-322).

Plaintiff continued to be seen by Dr. Shugart on a periodic basis, with an MRI scan of her lumbar spine on July 29, 2005 showing that she had a protruding disc at L5-S1 impinging on the right S1 nerve root. (R.p. 323). However, Plaintiff declined a surgical referral regarding this disc protrusion, and an examination on December 19, 2005 revealed that Plaintiff had full range of motion in her extremities, no inflamation or edema, and no specific trigger points, although Plaintiff continued to complain of significant pain and significant stress. (R.pp. 342-345). On March 15, 2006, Plaintiff was found to have no acute limitations in the range of motion of her extremities, although she exhibited a "difficult gait due to pain". (R.p. 341). Dr. Shugart continued to opine that Plaintiff was disabled. (R.p. 350).

10



Dr. Korn performed a second consultative medical examination on the Plaintiff on October 3, 2006. Plaintiff stated that she had "pain all the time" related to her fibromyalgia, and that her asthma combined with smoking over the years had limited her breathing. Plaintiff also stated that she had problems with depression, and was in a "down [ ] mood most of the time....". On examination, Plaintiff was found to have full range of motion with 5/5 strength in her upper extremities, with no crepitance, deformity or edema. Other than eczema on her hands, the only significant findings noted by Dr. Korn was "minimal degenerative joint disease in some phalangeal joints." Plaintiff exhibited pain on flexion of her hips and knees, although her knees had full extension. Plaintiff was noted to have "quite a substantial bit of patellofemoral grinding with passive flexion and extension of the right knee more than left", and difficulty crouching due to knee pain. When Plaintiff exhibited limitations and pain with movement in the lumbar spine, Dr. Korn noted that "Waddell signs are all strongly positive."[5] Dr. Korn opined that Plaintiff's low back measurements were invalid due to this inconsistency, with the most significant objective findings relating to Plaintiff's knees, where she had limited flexion and substantial crepitance at the joints. Dr. Korn opined that Plaintiff could not do any kind of squatting or crouching, at least not on a repetitive basis, and that she was also limited in her ability to climb. Based on Plaintiff's MRI report, he believed that Plaintiff's ability to sit for a prolonged period of time was limited, and in light of Plaintiff's dependency on morphine and benzodiazepine, she should not work above floor level or around dangerous moving machinery due to safety concerns. Due to her hand dermatitis, she would not be able to do kitchen work and would have to wear protection with respect to activities such as

---

[5]Waddell signs are signs which indicate a non-physiological basis for an individual's pain, including overreaction during an examination.

11



food handling or exposure to solvents. (R.pp. 355-358). Dr. Korn also completed a statement of ability to do work related physical activities, in which he opined that Plaintiff could perform light work limited by only occasionally having to kneel, crawl, and stoop, and never climbing ramps or stairs. She could also sit less than six hours in an eight hour work day. (R.pp. 360-362).

Finally, Dr. Shugart submitted a report on November 14, 2006 in which he found that Plaintiff had no signs of respiratory distress with clear auscultation bilaterally, with no wheezes, crackles or rubs, normal range of motion and strength in her extremities with no joint enlargement or tenderness, and decreased range of motion in the lumbar area. Dr. Shugart also found Plaintiff was suffering from no depression, anxiety, or agitation. (R.pp. 264-265). Nevertheless, in a clinical assessment of pain dated December 11, 2006, Dr. Shugart opined that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work, that her pain would greatly increase with activity, and that her medications would also hinder or limit her activities. (R.pp. 367-368).

The ALJ determined after review of this medical evidence and after consideration of the entire record that Plaintiff retained the residual functional capacity for light work at a modified range (lifting and carrying up to twenty-five pounds occasionally and twenty pounds frequently) with only occasional kneeling, crawling and stooping, never climbing or crouching, sitting for less than six hours in an eight hour work day, and no working around hazards, fumes, odors and gasses. (R.p. 17). In reaching this conclusion, the ALJ essentially adopted the findings of Dr. Korn in his report of October 3, 2006. (R.pp. 17, 355-358). The ALJ rejected Dr. Shugart's conclusion that Plaintiff's impairments rendered her totally disabled, finding that Dr. Shugart's own treatment notes did not support such restrictive limitations and that his conclusion was at least partially based on Plaintiff's



own self-reports of the extent of her limitations. (R.pp. 27-28); see Burch v. Apfel, 9 Fed.Appx. 255 (4th Cir. 2001) [ALJ did not err in giving treating physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]; cf. Craig, 76 F.3d at 590, n. 2 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]. The undersigned can find no reversible error in the ALJ's treatment of Dr. Shugart's opinions in conjunction with the medical evidence and records in this case.

As discussed hereinabove, there is no objective evidence in Dr. Shugart's medical records to show that Plaintiff's condition was worse after June 2002 than it had been prior to that time, with his own records also routinely noting that Plaintiff was not suffering from synovitis or significant edema, that she exhibited full range of motion in her extremities, that she was not experiencing any significant problems with depression, that she had 5/5 strength in her extremities, and that her lungs were generally clear to auscultation with no wheezing. Further, the records and opinions of Drs. Korn and Wells discussed hereinabove provide substantial evidence to support the residual functional capacity found by the ALJ; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-



examining physician can constitute substantial evidence to support the decision of the Commissioner]; Johnson, 434 F.3d at 657 [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims].

While Plaintiff correctly notes that Dr. Shugart opined on several occasions that Plaintiff had a greater degree of limitation than was found by the ALJ, the ALJ was not required to accept this opinion. See Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990) [affirming decision where ALJ found, inter alia, that claimant worked for years despite impairment with no evidence his condition worsened, and that he had stopped working "for reasons other than his impairment."]. Rather, the ALJ properly exercised his authority in reviewing and evaluating all of the evidence in making his decision. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]. Plaintiff's claim that the ALJ failed to properly consider and evaluate Dr. Shugart's opinion is therefore without merit.

Plaintiff's argument that the ALJ erred by failing to consider all of Plaintiff's impairments and the effects these impairments would have in combination on her ability to perform gainful employment is also without merit. A review of the ALJ's decision shows that he thoroughly discussed all of the medical evidence as well as Plaintiff's subject testimony in making his decision, including the various medical findings of the physicians as well as that Plaintiff was obese and the



effect this condition had on her ability to engage in postural activities. See generally, (R.pp. 17-28). While Plaintiff complains that, as part of this analysis, the ALJ failed to properly evaluate her mental impairments, to the contrary the ALJ specifically found after review of the medical evidence that Plaintiff did not have a severe mental impairment. (R.pp. 16-17). See 20 C.F.R. § 404.1521(a) ["An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"]; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). This finding is supported by the medical evidence from Dr. Wells showing that Plaintiff was on Zoloft and was doing well; (R.pp. 258-260); as well as the psychiatric findings of Dr. Phillips and Dr. Varner. (R.pp. 223, 235-248). Indeed, Dr. Shugart himself found on November 14, 2006 that Plaintiff was suffering from no depression, anxiety, or agitation. (R.pp. 264-265). *Cf.* Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. Plaintiff's complaint that the ALJ did not properly consider Plaintiff's hand limitations is also without merit, as the ALJ included Plaintiff's limitations due to her hand dermititis in his findings. (R.pp. 17, 405).

While Plaintiff obviously disagrees with the ALJ's conclusions, the record contains substantial evidence to support these findings. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. The record reflects a thorough review by the ALJ of the medical record and other evidence, and the undersigned does not find that the ALJ improperly considered or evaluated Plaintiff's RFC or performed an incomplete or inaccurate RFC assessment. See Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court

15



scrutinizes the record as a whole to determine whether the conclusions reached are rational]; *cf.* Browning v. Sullivan,  958 F.2d 817, 821 (8th Cir. 1992) [ALJ properly considered whether claimant's impairments in combination were disabling by separately discussing claimant's impairments].

Nor does the evidence reflect that the ALJ improperly evaluated Plaintiff's subjective testimony, as the decision reflects that the ALJ thoroughly reviewed the medical evidence, Plaintiff's own testimony as to her condition, and the inconsistency of allegations and the extent of Plaintiff's daily activities when compared with the objective medical evidence, to find that Plaintiff's description of the severity of her limitations was not totally credible. See generally, (R.pp. 26-27). While more detail can almost always be provided in these types of reports, the undersigned can find no reversible error in the ALJ's treatment of the Plaintiff's subjective testimony in conjunction with the objective medical evidence of record, nor do I find that the ALJ failed to consider all of Plaintiff's impairments or conducted a flawed credibility analysis. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; See Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiffs testimony and the other evidence of record in evaluating the credibility of the plaintiffs subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8[`h] Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of



disability"]; Parven-McGladdery, No. 02-1052, 2002 WL 31780954 ["[A]lthough some people suffering from fibromyalgia may be totally disabled, most people inflicted with that disease are not disabled". ]; Craig, 76 F.3d at 596, n.7  [for an individual to establish that a condition he had previously worked with subsequently became disabling, he must establish significant deterioration in that condition].          Plaintiff's final argument is that the ALJ erred by failing to consider whether Plaintiff had any transferable skills in deciding her claim.  However, a review of the testimony of the vocational expert at the hearing shows that the vocational expert provided an assessment of Plaintiff's past relevant work and of the skills necessary to perform that work.  The ALJ specifically asked the VE whether these skills would be transferable to other jobs, to which the vocational expert responded "yes".  (R.pp. 399-400).  The VE then testified based on a hypothetical incorporating the limitations found to exist by the ALJ that Plaintiff could perform the jobs of appointment clerk and transcriptionist with her limitations; (R.pp. 404-406); and further testified that Plaintiff had transferable skills that would directly transfer to these jobs. (R.pp. 403-404).[6]  The undersigned can find no error in the ALJ's consideration of the issue of transferability of skills in this testimony and evidence.

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this

---

[6] A third position, that of a receptionist, was ultimately eliminated based on the limitations found to exist by the ALJ. (R.pp. 403, 406).



17

Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

                                                  _____
                                                  Bristow Marchant
                                                  United States Magistrate Judge

Columbia, South Carolina

April 23, 2008

